STATE of North Dakota, Plaintiff
and Respondent,

v.

Kenneth K. PYLE, Defendant and
Appellant.

Cr. 260.

Supreme Court of North Dakota.

July 8, 1955.

Rehearing Denied July 26, 1955.

Francis Murphy, George E. Duis, Fargo, for defendant and appellant.

Paul Benson, Atty. Gen., of North Dakota, Lee F. Brooks, State's Atty. of Cass County, Fargo, for plaintiff and respondent.

SATHRE, Judge.

This is an appeal from a judgment rendered by the county court of Cass County, the same having increased civil and criminal jurisdiction, finding the defendant guilty of violating Section 12–1006 NDRC 1943, which reads as follows:

"Every public officer authorized to sell or lease any property, or make any contract in his official capacity, who voluntarily becomes interested individually in such sale, lease, or contract, directly or indirectly, is guilty of a misdemeanor."

The charging part of the information is as follows:

"That heretofore, to-wit: On or about the 20th day of July 1953, in Barnes Township in the county of Cass and State of North Dakota the said defendant Kenneth K. Pyle being then and there a public officer, to-wit: A member of the township board of Barnes Township, Cass County, North Dakota, and in such capacity authorized to make contracts for said township in his said official capacity, did wilfully, and voluntarily become interested directly in a contract of said township, in that at said time and place the said defendant received payment in the sum of three hundred thirty-seven and no/100 dollars ($337.00) from said township for mowing, blading, and bulldozing work upon the highways of said township;

"This against the Peace and Dignity of the State of North Dakota, and contrary to the form of the Statutes in such case made and provided."

The defendant was tried to the court and a jury. The jury returned a verdict of guilty and judgment was entered thereon and a fine imposed upon the defendant. Thereafter the defendant made a motion for a new trial. The motion for a new trial was heard before the county court on June 10, 1954 and after such hearing the motion was denied.

The defendant appealed from the order denying a new trial and from the judgment.

The specifications of error may be stated as follows and were argued together in defendant's brief.

"1. That the Court erred in denying the Defendant's motion to quash the information before the trial of this case.

"2. That the Court erred in overruling and denying the motion by the Defendant in arrest of judgment.

"3. That the Court erred in denying the Defendant's motion for a judgment of acquittal at the close of all of the evidence.

"4. That the Defendant was not proven guilty beyond a reasonable doubt, and that the evidence is insufficient to support the verdict of guilty.

"5. That the evidence fails to show that the Defendant did voluntarily

enter into any contract as the Statute requires.

"6. That the Court erred in instructing the jury as to the meaning of the word voluntary.".

We will consider the specifications in the order argued in defendant's brief.

■ The first contention of the defendant is that the information does not allege facts sufficient to constitute a public offense under Section 12–1006 for reason that the language used in said section is in the singular form; that under the statute he cannot enter into a contract as an individual officer and that at least a majority of the board is necessary to make a contract. We see no merit in his contention. The defendant was a member of the board and as such member he was a public officer and while such officer he entered into a contract with the majority of the board of supervisors of Barnes Township on behalf of the partnership of which he was a member. Clearly the contract was in violation of Section 12–1006 NDRC 1943.

. The next contention of the defendant is that the evidence was insufficient to support the verdict.

There is no dispute as to the facts in this case. The defendant had been a member of the board of supervisors of Barnes Township, North Dakota for a period of twelve years, and was Chairman of the Board at the time of the alleged offense charged in the information.

State's exhibit "A" shows that K. K. Pyle and Son performed labor on the highways of Barnes Township between June 26th, 1953 and July 10, 1953 for which they were paid the sum of $337. It is admitted the K. K. Pyle or Kenneth K. Pyle the defendant herein and his son are partners and that the partnership performed the work as shown by state's exhibit "A" and received the payment therefor. State's exhibit "B" is the warrant issued by the clerk of Barnes Township in the sum of $337 payable to K. K. Pyle and Son and approved by Kenneth K. Pyle as Chairman of the Board of Supervisors. State's exhibit "C" is a check drawn by M. J. Nelson, treasurer of Barnes Township in the sum of $337 payable to K. K. Pyle and Son, dated July 20, 1953 and endorsed Pyle & Son, by Kenneth Pyle. It is admitted that state's exhibits "A", "B" and "C" all relate to the same transaction and constitutes a statement of the services rendered by Kenneth K. Pyle & Sons and the payment therefor by Barnes Township.

It is claimed by the defendant that the services performed were not his voluntary act, but were performed at the insistence of the other members of the board and that therefore he was not guilty under the statute.

There is no evidence in the record that the other members of the board exerted any coercion upon the defendant, nor is there any evidence that the defendant offered any resistance to accepting the contract involved here. His testimony in this respect is: "I have told them (members of the board) many times that I would just as soon not do it if they could get somebody else." This testimony shows that he was willing to do the work for the township if they could not get somebody else and certainly it cannot be said that he performed the work under compulsion or coercion.

The state introduced in evidence as exhibits several statements of similar services performed by Kenneth Pyle and Son for Barnes Township between April 23, 1953 and November 11, 1953. These exhibits show that warrants and checks in sizeable amounts were issued to Kenneth Pyle and Son in payment of said services. The defendant objected to the introduction of these exhibits as prejudicial, but they were admitted solely for the purpose of showing a series of similar transactions between the defendant and Barnes Township, and that the services involved here were not accidental or involuntary or performed under stress of urgent circumstances.

The work done by the defendant as shown by exhibit "A" consisted of what is known as blading, that is scraping and level-

ing grades of the highways of the township, cutting of weeds along the highway ditches and "dozing" which would mean bulldozing or pushing of dirt along the highway.

It is next contended that Section 12–1006 NDRC 1943 does not apply to township officers or supervisors of a township, and that the only statute applicable to township officers is Section 58–0512 NDRC 1943 which is as follows:

"No township officer shall become a party to or be interested directly or indirectly, in any contract made by the board of which he is a member. Every contract or payment voted for or made contrary to the provisions of this section is void. Any violation of this section shall constitute malfeasance in office which will subject the officer so offending to removal from office."

■ We are unable to agree with this contention. While Section 58–0512 does apply specifically to township officers, nevertheless such officers are also subject to the provisions of said Section 12–1006 which applies to all public officers. Section 12–0801 is a part of Chapter 12–08 NDRC 1943 and is as follows:

"The various provisions of this chapter which relate to executive officers apply in relation to administrative officers in the same manner as if administrative and executive officers both were mentioned together."

Section 12–0804 NDRC 1943 of the same Chapter provides:

"In addition to the penalty affixed by express terms to every neglect or violation of official duty on the part of public officers, county, city, village, township, or state officers not liable to impeachment may be removed from office, in the discretion of the court, even though the statute defining the neglect or violation does not so provide."

The statutes quoted must be construed together, and when so construed apply to all public, executive or administrative officers of the state not subject to impeachment.

■ Finally defendant contends that the trial court erred in refusing to give the following requested instruction as to the meaning of the word "involuntarily":

"The law provides and the information alleges that the Defendant entered into the contract described in the information voluntarily. In this relation I charge you that the word voluntarily as used in the statute means without coercion or pressure of circumstances. And I charge you that before you can find the Defendant guilty of the offense alleged in the information you must find first; beyond all reasonable doubt, that he did the things and acts set out in the information without the coercion or pressure of circumstances or emergencies; in other words, that he did them of his own volition."

Instead of giving the requested instruction the court instructed the jury as follows:

"The word voluntarily as used in the statute means an act done or performed willingly or intentionally as distinguished from being done under compulsion or coercion. It means that the Defendant must have become interested in the contract with the Township Board willingly and not under duress and not under any legal obligation to do this work. It carries with it the idea of freedom from constraint as opposed to being accidental or inadvertent."

■ We think the instruction given by the trial court was proper and that it correctly defined the word "voluntarily" as the same is used in the statute and that the defendant was not prejudiced thereby. Under the instruction given it was the province of the jury to determine from the evidence whether the contract involved was entered into voluntarily or involuntarily by the defendant.

As we have pointed out herein there is no dispute as to the facts in this case and we are satisfied that the evidence is sufficient to support the verdict. The defendant entered into a contract on behalf of a partnership of which he was a member with the other two members of the board to do the work upon the highway of the township. He was chairman of the board and he signed the warrants issued by the clerk and accepted the checks issued by the treasurer in payment of the work done, although he testified that he did not know or was not aware of the fact that there was a law such as Section 12–1006. However it is a well-established rule that ignorance of the law excuses no one and it follows therefore that defendant's ignorance of the existence of Section 12–1006 was not a defense to the offense with which he was charged. In the case of Wess v. South Dakota Packing & Shipping Co., 43 S.D. 467, 180 N.W. 510, 511, the court said:

"It seems to be generally held that the Legislature, in the exercise of the police power may prohibit, under criminal penalty, the performance of a specific act. The doing of the prohibited act constitutes the crime, and the purity of the motive by which the act is prompted, and the knowledge or ignorance of its criminal character, are immaterial on the issue of guilt."

The county court properly denied defendant's motion for a new trial and the judgment is affirmed.

BURKE, C. J., and MORRIS, GRIMSON and JOHNSON, JJ., concur.