BEAUFORD J. WELLS AND CLIFFORD J. ATKINSON, PLAINTIFFS AND APPELLANTS, v. STANLEY J. THILL AND ASSOCIATES, INC., AND THE CITY OF BELT, A MUNICIPAL CORPORATION, DEFENDANTS AND RESPONDENTS.

No. 11524.
Submitted Feb. 10, 1969.
Decided March 31, 1969.
452 P.2d 1015.

Graybill, Graybill & Ostrem, Donald L. Ostrem, (argued), Great Falls, for plaintiffs and appellants.

Angland & Marra, Joseph Marra, (argued), Jardine, Stephenson, Blewett & Weaver, Jack L. Lewis, (argued), Great Falls, for defendants and respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

30

The plaintiffs brought this action in the district court to recover damages for personal injuries. Upon defendants' motions to dismiss, the trial judge determined to treat the motions as motions for summary judgment under Rule 12(b) (6), M.R.Civ.P., and ordered summary judgment entered against the plaintiffs. From this order the plaintiffs appeal.

Plaintiffs were injured in a 1964 trench cave-in while employed by an independent contractor, Fedco, Inc., who, in turn, had been hired by the respondent City of Belt to construct a sewer project designed and supervised by the respondent Stanley J. Thill & Associates, Inc. Fedco dug the trench, but failed to shore it with timber as its written contract with the City of Belt required and also failed to dig the trench in accordance with the laws of the State of Montana as its written contract with the City of Belt required.

Plaintiffs were covered by Workmen's Compensation but brought this action under section 92-204, R.C.M.1947, against the City of Belt, hereafter called the city, as owner, and against Stanley J. Thill & Associates, Inc., hereafter called the engineer, who had drawn the plans and specifications for the city and who were to supervise on behalf of the city to insure that the contract was performed in accordance with the plans and specifications.

Both respondents filed motions to dismiss; the court temporarily overruled respondent engineer's motion; but later, after considering respondent city's motion, issued its order granting motions for summary judgment for both respondent defendants. The basis for the order granting the motions for summary judgment appears to be the "independent contractor rule" and a determination that an employee of an independent contractor does not qualify for recovery under exceptions to that rule which allow recovery to third persons.

██ ██ Since the court below treated the defendants' motions to dismiss as motions for summary judgment under Rule 12(b) (6), M.R.Civ.P., it is well to remember that "For the

purposes of the motion, the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." 2A Moore's Federal Practice 2266-2269, paragraph 12.08. Also "A [complaint] may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim." Ibid, page 2271. The question then becomes whether the plaintiffs failed to state a claim upon which relief can be granted, which would justify the court's summary judgment.

The plaintiffs in their complaint and brief admitted that Fedco was an independent contractor. Therefore, the question became whether there is a duty on the part of the owner or his supervising engineer, running to the employee of an independent contractor, to see that the independent contractor complies with minimum safety standards promulgated by the Montana Industrial Accident Board pursuant to statute, section 92-1204, R.C.M.1947, when the independent contractor has, in his written contract with the owner, specifically agreed to comply with such standards.

The plaintiffs admit that ordinarily the rule is that a contractee-owner is not liable for the acts of an independent contractor or his servants. However they then go on to contend that they should fall under exceptions to that rule relating to certain third persons and to inherently dangerous or extra-hazardous work.

We cannot agree with those contentions of the plaintiffs because on closer scrutiny it appears that the exceptions apply to persons other than servants of the independent contractor. The rule appears to be well-settled that:

"Since, as discussed supra § 3(1), the servant of an independent contractor or of a subcontractor is not a servant of the contractee, ordinarily the contractee is not liable for

injuries to such servant caused by the acts or negligence of the contractor, or subcontractor, or coemployee of the injured servant. * * * The rule is not affected by a statute making it the duty of owners, contractors, and subcontractors, engaged in designated work, to take designated precautions for the safety of their employees, since such statutes are intended to apply only to that member of the class enumerated who was engaged in the work designated at the time when the injury occurred.

"* * * The contractee does not owe to the employees of the independent contractor the same duties he owes to his own employees. So too the duties which a contractee owes to employees of the independent contractor are less than those owing to third persons; and consequently his liability to such employees is not as extensive as his liability to third persons, that is, the act may be such as to render the contractee liable to third persons although it would not make him liable to a servant of the contractor." 57 C.J.S. Master and Servant § 600.

To the same effect see 35 Am.Jur., Master and Servant, Section 159.

A case that we think is very close in point is that of Potter v. City of Kenosha, 268 Wis. 361, 68 N.W.2d 4 (1955). There the Wisconsin Supreme Court saiid: "The principal question confronting us upon this appeal is whether a legal duty devolved upon the city not to permit the performance of work in the trench by the contractor's employees unless shoring as required in the safety order of the Industrial Commission had been provided." Ibid, p. 7. There the city had the right to inspect in order to assume that the specifications and plans for a city sewer project were being followed. The court held that the contractor was still an independent contractor and then went on to say: "In every such instance where the contractor is in full supervision and control of the work, he alone

becomes liable to his employees under the statute for injuries sustained." Ibid, p. 11.

In this same vein the court further stated: "The contractor had agreed to provide necessary shoring and had bound himself to comply with all laws, regulations and ordinances which, obviously, included observance of Industrial Commission's General Order 610 on Trenches." Ibid, p. 12.

Also what this Court said in the case of Hackley v. Waldorf-Hoerner Paper Products Co., 149 Mont. 286, 425 P.2d 712 (1967), is germane to the instant case for here, as there, the landowner had employed independent contractors to perform the work and had not, as we view the situation, retained control over the premises.

In the Hackley case we held:

"Generally a landowner is not liable for injuries suffered by servants of an independent contractor. 57 C.J.S. Master and Servant § 600. The position of the appellant here is that of an invitee or a business visitor lawfully on the premises and this court in the case of Cassaday v. City of Billings, 135 Mont. 390, 340 P.2d 509, 510, summarized the law in Montana as follows:

" 'It is well established in Montana that a landowner is obligated toward an invitee to either use ordinary care to have the premises reasonably safe, or to warn the invitee "of any hidden or lurking danger therein". Milasevich v. Fox Western Montana Theatre Corp., 118 Mont. 265, 270, 165 P.2d 195, 197, and see Restatement, Torts, Negligence, § 343. He is not an insurer against all accidents and injuries to such persons while there.' See also Chichas v. Foley Brothers Grocery Co., 73 Mont. 575, 236 P. 361.

"While this state has not had to consider the matter there is an exception to the rule which arises when a landlord has retained control over the property on which work is being performed. The landlord then has the duty to use ordinary care, so that the premises will be reasonably safe for the independ-

ent contractor's servants. Dillingham v. Smith-Douglass Co., 261 F.2d 267, 269 (4th Cir.1958) ; 57 C.J.S. Master and Servant, § 603; 38 Am.Jur., Negligence, § 94. For the purposes of this case it must be concluded that Bumstead-Woolford Co. was an independent contractor and the disposition of the case is governed by the general rule, which under the present circumstances free a landowner from liabilities for injuries suffered by an independent contractor's servants, and not by the exception." Hackley, supra, 295-296, 425 P.2d 717.

The instant case is governed by the rule and not by the exception, and in our view the city is under no duty in the present factual situation to see that their independent contractor complies with the minimum safety standards.

There remains the question of whether the supervising engineers owed any duty to the plaintiffs to see that certain safety standards were met.

The plans and specifications prepared and furnished by the engineer, which were also made a part of the contract, provided that "* * * all applicable State laws, municipal ordinances, and the rules and regulations of all authorities having jurisdiction over construction of the project shall apply to the contract throughout, and they will be deemed to be included in the contract the same as though herein written out in full." The plans and specifications also provided for shoring where necessary. From that it is clear to this Court that there were provisions in the plans and specifications that safety precautions should be taken to assure the safety of employees working on the project. Those provisions in the contract made it the duty of the contractor to take all necessary safety precautions.

On the other hand, the duty of the engineer, which duty ran to the city, was to see that a certain end result was eventually accomplished, namely that the project as finally constructed and turned over to the city met the plans and specifications it prepared for the city. The engineer's real interest

was not in the actual construction but in a completed project in accordance with the plans and specifications.

There was no duty on the part of the engineer to see that standards set up by the Montana Industrial Accident Board were met. That duty lay with the contractor and with the Industrial Accident Board.

For these reasons the order of the district court is affirmed.

MR. JUSTICES CASTLES, HASWELL and JOHN CONWAY HARRISON, concur.

MR. JUSTICE BONNER, (dissenting):

I dissent. While in my opinion the majority opinion delivered by Mr. Chief Justice Harrison is founded on the present Montana case law relating to the "independent contractor rule" I believe the facts in the instant case justify a reversal of these precedents. This rule established by this Court is founded on legal fiction born in days gone by which should not now apply under modern conditions. The rule abolishes and holds for naught the established maxim of "where there is a wrong there is a remedy." Hence the present rule should be abolished under such facts as we have in the instant case.

The defendants here use as a shield of defense the fact that the general contractor is solely responsible for the safety of his plant. Thus, the contractor who carries workmen's compensation for his employees is the only one that the employee may look to for damages occasioned by the negligence of the city and the engineer. In other words, the city and engineer claim they have no duty to safeguard the life and limb of an employee working for the general contractor. The pertinent provisions in the plans and specifications prepared and furnished by the engineer are part of the contract and are as follows:

"(b)  *Shoring:*  Suitable lumber shall be provided and used by the contractor to shore and brace the sides of the trenches, where necessary or required by the engineer."

36

"11. *Contractor's Obligations.* The contractor shall and will, in good workmenlike manner, do and perform all work and furnish all supplies and materials, machinery, equipment, facilities and means, except as herein otherwise expressly specified, necessary or proper to perform and complete all the work required by this contract, * * * in accordance with the provisions of this contract and said specifications * * * *He alone shall be responsible for the safety, efficiency, and adequacy of his plant, appliances, and methods, and for any damages which may result from their failure or their construction, maintenance, or operation.*" (Italics supplied.)

"(a) In case any class of employees engaged in hazardous work on the project under this contract is not protected under this contract is not protected under the Workmen's Compensation Statute, the Contractor shall provide and shall cause each subcontractor to provide adequate employer's liability insurance for the protection of such of his employees as are not otherwise protected."

"*Laws and Regulations.* The bidder's attention is directed to the fact that all applicable State laws, municipal ordinances, and the rules and regulations of all authorities having jurisdiction over construction of the project shall apply to the contract throughout, and they will be deemed to be included in the contract the same as though herein written out in full."

Under subdivision (b) of the plans and specifications the engineer is responsible for shoring. Then in order to eliminate financial responsibility of the city and engineer sole responsibility is placed on the contractor who carries "workmen's compensation" under paragraph 11 of the contract just quoted above, which I believe is an intentional provision to avoid damage suits against the city and the engineer, regardless of their negligence or neglect in enforcing safety regulations. This provision certainly appears to be against public policy.

In considering this case some of the following questions present themselves.

1. Did the city make payment to the engineer for his services?

2. After letting the contract did the city ignore its responsibility to see to it that the contractor and the engineer properly exercised their functions?

3. Did the city pay the contractor or the engineer the full amount agreed upon even though it knew or should have known that both the contractor and the engineer violated safety standards designed to protect the life and limb of the working men?

4. Did the city assess a penalty against the contractor or the engineer for safety violations?

5. Did the city attempt to have penalties assessed against the said parties as required by law for violations of the safety laws and regulations?

6. Did the city, the contractor and the engineer intentionally violate the safety laws and regulations because under the present judicial rule they are immune from damage actions?

7. Was the engineer or the city negligent in not seeing to it that shoring was accomplished as required by the safety rules and regulations?

8. Was shoring necessary? What part of the ditch had shoring? How long did the dangerous condition exist? Were there any complaints made because of the lack of shoring and if so to whom?

The answers to the foregoing questions will bring out some issues of fact to be determined by a jury and not by the district court as a matter of law. Hence the court erred in granting the summary judgment, in my opinion.

While the employees were covered by workmen's compensation by the general contractor this fact should not be used under the facts in this case to provide a shield of defense for the city and the engineer who may be guilty of negligence and wrong doing under the contract.

Some of the courts of this country, and this Court, have created a shield of defense with the end result of protecting independent contractors and owner-contractees while, at the same time working to the detriment of the working man. This shield of defense is the rule that a contractee-owner is not liable for the torts or negligence of his contractor or his contractor's servants. As stated in 557 C.J.S. Master and Servant § 584, p. 353:

"The doctrine of respondent superior does not apply where the relationship of the parties is that of contractee and independent contractor, and, although the rule is subject to numerous qualifications and exceptions, which are discussed infra §§ 585-598, the general rule is that a contractee is not liable for the torts or negligence of his contractor or of the contractor's servants, nor is he liable for the torts and negligence of subcontractors and their servants. * * *

"The doctrine of nonliability for the acts or omissions of an independent contractor or his servants is founded on the principle that one person should not be compelled to answer for the fault or neglect of another over whom he has no control, and that the employer has a right to rely on the presumption that the contractor will discharge his legal duties owing to his employees and third persons."

But see also 33 A L.R.2d 7, 11, which states:

"That a general employer is not ordinarily responsible for the negligence of an independent contractor or his servants is one of the basic concepts of tort law. The reason usually stated is that one ought not to be responsible for the torts of those over whom he has no control * * *

"The general acceptance of the basic principle which is usually described as 'independent contractor' is, however, misleading in the sense that it promises unanimity of the decisions applying the rule. Unfortunately, this is not so and as far as the results reached by the courts are concerned the cases are in a hopeless conflict. This conflict is brought about by the fact

that so many exceptions and limitations have been grafted by the courts upon the general rule that a present the latter is considered only as an introduction to the catalog of exceptions."

One exception to the above rule is work that is inherently dangerous or ultrahazardous. In such case the contractee may be liable to certain persons. More specifically, as stated in 57 C.J.S. Master and Servavnt § 590, p. 359:

"A very important exception to the general rule, discussed supra § 584, exempting the contractee from liability for injuries caused by the negligence of an independent contractor or his servants is that, where the work is dangerous of itself, or, as often termed, is 'inherently' or 'intrinsically' dangerous, unless proper precautions are taken, liability cannot be evaded by employing an independent contractor to do it. Stated in another way, where, in the natural course of things, injuries to *third persons* must be expected to arise unless means are adopted by which such consequences may be prevented, the contractee is bound to see to the doing of that which is necessary to prevent the mischief and cannot relieve himself of his responsibility by employing some one else, whether it is: the contractor employed to do the work from which the danger arises or some independent person, to do what is necessary to prevent the act he has ordered to be done from becoming wrongful. The taking of these precautions, it is said, is a nondelegable duty owing to third persons who may sustain injuries from the work, and the contractor is considered an agent or servant for whose act his employer is responsible." (emphasis supplied).

In this same vein see Restatement, Second Torts §§ 416,. 427 and 427A.

So one rule in final form is that a contractee-owner is not liable for the torts of an independent contractor, except if the work is inherently dangerous, then the owner may, in certain instances, be liable to third persons. I would concede that the third persons referred to in the above quotation gen-

erally refers to persons other than employees of the independent contractor. At the same time I submit that the rule should be broadened to include employees in certain instances, namely where the legislature has authorized some board to set down minimum safety standards for the protection of workers, which standards have been formulated.

Prior to 1963, and under the case of Shea v. North-Butte Min. Co., 55 Mont. 522, 179 P. 499, which held the Montana Workmen's Compensation Act constitutional, a worker could elect not to be bound under the Act. (Laws 1915, Chapter 96, Section 3(g)) This preserved the worker's common law right against the employer if he chose to exercise it. However, if he elected to be bound under the Act his exclusive remedy so far as his employer was concerned was under the Act. (Shea v. North-Butte Min. Co., supra at p. 532, 179 P. 499; Laws 1915, Chapter 96, Section 3(d), now section 92-204, R.C.M.1947.)

In 1963, however, the Montana Legislative Assembly eliminated the right of election by employees except in the case of officers of private corporations. See Laws of 1963, Chapter 95. So at the present time, as between employer and employee, the employee's remedy is exclusively under workmen's compensation.

In addition, Montana statute section 92-301, R.C.M.1947, provides:

"This act is intended to apply to all inherently hazardous works and occupations within this state, and it is the intention to embrace all thereof in the four following sections, and the works and occupations enumerated in said sections are hereby declared to be hazardous   *   *   *"

Section 92-302 provides:

"Construction work.   *   *   *   sewers   *   *   *."

Section 92-1204 provides:

"The board shall have power, in addition to other powers herein granted, by general or special orders, rules, or regulations, or otherwise:

"1. To declare and prescribe such safety devices, safeguards, or other means or methods of protection as are well adapted to render employees and places of employment safe;

"2. To fix such reasonable standards and to prescribe, modify, and enforce such reasonable orders for the adoption, installation, use, maintenance, and operation of safety devices, safeguards, and other means and methods of protection, as may be necessary for the protection of the life and safety of employees; * * *" (To the same effect see section 41-1702.)

Combining all these we end with the mandate that certain occupations by legislative enactment are "inherently hazardous," that sewer construction work is one of those occupations and that the Industrial Accident Board shall have the power to prescribe safety standards for the protection of employees in sewer construction work. The Industrial Accident Board has followed the mandate by formulating the Minimum Safety Standards for the Construction Industry in Montana 1964, specifically Chapter IV thereof.

Again, combining all of the foregoing with the court made rule that an owner-contractee is not liable for the torts of his independent contractor we end up with a situation entirely opposed to the one we should have. The owner-contractee, realizing that certain safety standards must be met, provides in the contract that it will be the responsibility of the contractor to meet them, and the contractor agrees to do so. At the same time the contractor, realizing that it will be more economical not to comply with the safety standards "neglects" to comply because he also realizes that the employee's exclusive remedy, so far as he is concerned, is under the Workmen's Compensation Act which generally is far less expensive than an award of damages by a jury.

The penalties the contractor faces for non-compliance are relatively minor: he may be subject to a penalty of six months in jail, a fine of $500, or both (sections 41-1706, 92-1222, 94-116, R.C.M.1947); he may be closed down until he complies

with the standards, having, in the meantime, saved the cost of complying; or he may face a rise in insurance premiums. In any case economically he is better off not to comply. But if you remove the independent contractor shield of defense, the public policy of Montana that workmen be protected will be served.

The public policy that workmen in Montana should be protected is evident by House Bill No. 174 recently passed by the Forty-first Legislative Assembly and signed by Governor Anderson. (Chapter 341, Laws of 1969).

House Bill No. 174 eliminated from the Montana codes a provision that formed one of the bases of the Hackley case (Hackley v. Waldorf-Hoerner Paper Products Co., 149 Mont. 286, 425 P.2d 712), the second sentence of section 41-1702(b), R.C.M.1947, which provided that safety codes promulgated by the Industrial Accident Board should not be used in any civil suit or action brought against a landlord by an employee or by a member of the public so as to apply, increase, or affect the liability of the landlord. This prohibition has been removed by House Bill No. 174 which to me evidences a continuing concern for the protection of life and limb of the working man.

In conclusion we have two opposing principles. One is a statutory policy that working men in Montana in certain occupations should be protected from death or injury. This policy is shown in the statutory mandate that certain occupations are to be considered inherently dangerous, that the Industrial Accident Board shall have authority to prescribe safety standards in those fields and that the Workmen's Compensation Act shall be liberally construed in order to afford adequate protection. Opposed to that policy is a long-standing court made rule which also acts as a shield of defense for the owner-contractee, that a contractee is not liable for acts of an independent contractor.

The rule that an owner-contractee is not under the doctrine of respondeat superior liable for the acts of an independent

contractor came from a realization that the doctrine itself was sometimes too harsh. However, after the rule relieving the owner evolved it soon became apparent that that rule was sometimes too harsh so the courts began, in turn, to make exceptions to it. One exception the courts made was with regard to third persons where the work contracted for was inherently dangerous. It is now time for this Court to make another exception to the rule relieving the contractee from liability. That exception should be that where the legislature has set forth the public policy of the state to protect workers; has decreed that certain occupations are inherently hazardous; has authorized some board to formulate safety standards to protect workers in those occupations, which standards have been validly formulated, then a contractee may not by hiring an independent contractor relieve himself of seeing that those standards are met. Such a rule would be another very narrow exception to the general rule that a contractee is not liable for the torts of his independent contractor and would at the same time promote the public policy of this state to protect the life and limb of a working man.

The city is in a much different position than individual. It is in reality a part of the state government and as such it has the duty to cooperate, aid and enforce the safety regulations of this state It just cannot stand idly by or delegate its responsibility in this regard. It should be noted here that the engineer was employed by the city and not the general contractor.

Enforcement of safety standards by the Industrial Accident Board, by municipalities where involved, as well as by all state agencies concerned, supported by the courts, must be had otherwise safety standards become a sham and a useless expense. Abolishment of the "independent contractor rule" under facts as we have here by this Court would put teeth in the enforcement of these safety standards for the reason that the attitude of the owner seems to be if you cannot sue the independent contractor then you cannot penalize him

civily or criminally; also, that the coming under workman's compensation exonerates the general contractor from penalties accruing because of violation of safety standards.

For the foregoing reasons I submit that the summary judgment rendered below should be reversed and the case sent back for trial.