No. 12894

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

PATRICK LEARY,

Plaintiff and Appellant,

-vs-

KELLY PIPE COMPANY, a California
Corporation; F-B TRUCK LINES, a
Utah Corporation; and RICHARD WOOD,

Defendants and Respondents.

---

Appeal from: District Court of the Second Judicial District,
Hon. James D. Freebourn, Judge presiding.

Counsel of Record:

For Appellant:

Burgess, Joyce, Prothero, Whelan and O'Leary,
Butte, Montana
Thomas F. Joyce argued and Robert T. O'Leary argued,
Butte, Montana

For Respondents:

Corette, Smith and Dean, Butte, Montana
R. D. Corette Jr. argued, Butte, Montana
Henningsen, Purcell and Genzberger, Butte, Montana
Rex F. Henningsen argued, Butte, Montana

---

Submitted: February 3, 1976

Decided: APR 2 8 1976

Filed: APR 2 8 1976

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff Patrick Leary brought this action in the district court of Silver Bow County against the Kelly Pipe Company, F-B Truck Lines and Richard Wood for damages based upon the alleged negligence of all defendants. Plaintiff suffered personal injuries when a load of pipe fell from a truck-trailer onto him while he was assisting in the process of unloading. A separate jury verdict was returned for each defendant and judgment was entered accordingly. Plaintiff appeals.

Patrick Leary was an employee of the Bechtel Corporation at the time of the accident involved in this case. Bechtel Corporation is a large construction company/which had contracted to build a new ore treatment facility for the Anaconda Company in the vicinity of Anaconda, Montana. Part of the construction required the installation of a water line to the new plant, and steel pipe for this purpose was ordered from defendant Kelly Pipe Company, a California firm with a plant at Santa Fe Springs, California.

Kelly Pipe or Bechtel contracted with defendant F-B Truck Lines to haul the pipe from the Kelly Pipe plant to Anaconda. F-B is a Utah corporation that has an Interstate Commerce Commission certificate, or permit, to haul goods in interstate commerce by truck. F-B uses "contract drivers" to operate the trucks under a system whereby the driver buys the tractor with financing guaranteed by F-B and F-B owns the trailers that are attached to the tractors. The tractors carry the name of F-B and its distinctive colors.

On July 30, 1973, one Graham, a "contract driver" for F-B, was directed by F-B to pick up a load of pipe for F-B at Santa Fe Springs. The load in question consisted of twenty-

four pieces of pipe, each piece being forty feet long, eighteen inches in diameter, and weighing approximately one ton. Graham, with the assistance of Kelly Pipe employees, loaded the pipe on the trailer and secured the pipe with his own chains. Pieces of lumber called dunnage and chocks were also used to prevent lateral movement of the pipe while in transit. This lumber was provided from the yard of Kelly Pipe.

Graham drove the loaded truck to Wilmington, California and left it in a storage yard used by F-B. He removed his chains, leaving the load of pipe unbound.

On August 2, 1973, defendant Richard Wood, another "contract driver" for F-B, was assigned by F-B to pick up this load of pipe at the Wilmington yard for transport to the construction site near Anaconda, Montana. Wood had no Interstate Commerce Commission permit and no contractual relationship with Kelly Pipe, Bechtel Corporation, or Anaconda Company. Because Graham had removed his chains, Wood had to secure the load again and did so in a manner which became an issue in this lawsuit. Leary contends that had Wood secured the lower layers of pipe to the bed of the trailer, the subsequent accident would have been avoided. F-B and Wood say that the securing method employed was acceptable and not negligent. In any event, Wood proceeded to drive the load to Anaconda and arrived there on August 6, 1973.

Later the same day Wood drove the loaded truck to the pipeline construction site where Leary and others commenced to help him unload the pipe from the trailer. A crane was employed to attach cables to either end of a piece of pipe while Leary and another climbed onto the top of the load to place the cables on the ends of the pipe. Wood drove the truck during the unloading. While Leary was standing on the load of pipe after the first piece had been removed, the load rolled off the trailer to the ground in a sudden movement and the wooden dunnage cracked

- 3 -

and broke. Leary was unable to jump clear of the falling pipe, fell with it, and was partially pinned under some of the eighteen pieces of pipe which rolled to the ground. Leary's injuries necessitated the amputation of a forearm and a leg.

Leary brought an action in tort alleging that the negligence of all defendants caused Leary severe injuries resulting in physical and mental pain and suffering, medical expenses, impairment of past, present and future earning capacity, and lost wages for an indefinite period of time in the future. He sought judgment of $886,200. The jury returned a separate verdict for each defendant.

Leary specifies numerous errors in the district court which may be summarized:

1. Did the district court err in allowing four peremptory jury challenges to Kelly Pipe, and four peremptory challenges collectively to F-B and Wood?

2. Did the district court abuse its discretion in refusing to admit three photographs into evidence as offered by Leary?

3. Did the district court err in giving certain instructions to the jury?

The district court ruled at the outset of the trial that Kelly Pipe was in an adverse position to F-B and Wood, thus entitling Kelly Pipe to four peremptory challenges in addition to the four allowed to F-B and Wood. Leary objected at that time and now asserts that the ruling was prejudicial error in that the defendants were able to decimate the panel with their total of eight peremptory challenges.

All parties rely on Mullery v. Great Northern Ry. Co., 50 Mont. 408, 148 P. 323, in support of their respective positions on this issue. Mullery stands for the proposition that under our

jury challenge statute, now codified as section 93-5010, R.C.M. 1947, the words "each party" in reference to the permitted four peremptory challenges means "each side" unless the positions of codefendants are hostile to each other. The opinion suggests that hostility between nominal defendants may be shown "by pleading, representation, or evidence." In this case Leary contends that defendants assumed identical positions, while defendants contend that Kelly Pipe attempted to shift all liability onto F-B and Wood and created a hostility between them.

In any event plaintiff must show that any error in allowing additional challenges was prejudicial to him. As stated in Annotation, Effect of allowing excessive number of peremptory challenges, 95 ALR 2d 957, 963:

> "The numerical weight of authority in civil cases supports the rule that a judgment will not be reversed for error in allowing one or more peremptory challenges in excess of that provided by statute, unless the complaining party shows that he has exhausted his peremptory challenges and has suffered material injury from the action of the court, and that as a result thereof one or more objectionable jurors sat on the case, or for some other equally cogent reasons."

In accord: Ashley v. Safeway Stores, Inc., 100 Mont. 312, 47 P.2d 53. Cf. Ferron v. Intermountain Trans. Co., 115 Mont. 388, 143 P.2d 893. To the extent Ferron may be interpreted as contrary to our holding herein, it is expressly overruled. In the instant case Leary has advanced no fact which indicates material injury, nor has he attempted to show that objectionable jurors sat on the case. Thus the first issue must be resolved in favor of defendants.

The second issue concerns the refusal of the district court to admit into evidence three photographs offered by Leary as plaintiffs Exhibits 16, 17 and 18. The photographs show an F-B truck load of pipe and show the stringing of pipe from an F-B truck-trailer. The photographs were taken a few days prior

to the date of Leary's injury and in the same general vicinity as that in which the accident occurred. Leary offered them in evidence for illustration purposes.

The refusal to admit the proffered photographs was not an abuse of discretion . Photographic evidence may be used to "assist the jury in understanding a case." Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 439, 357 P.2d 4. Here Leary was introducing photographs to assist the jury only in understanding his theory that the trucks depicted in plaintiff's Exhibits 16, 17 and 18 were properly loaded with pipe while the truck involved in the accident was improperly loaded. This purpose for introduction of photographic exhibits is contrary to the purpose stated by this Court in McNair v. Berger, 92 Mont. 441, 460, 15 P.2d 834, namely:

> "' * * * that the photograph, as explained, will give a correct understanding of the condition existing at the time to which the controversy relates.'" (Emphasis supplied.)

These photographs do not depict any condition related to this controversy. The pictured trucks are different trucks loaded differently from the F-B truck and trailer involved in this case. We find no error in excluding them.

The final issue turns on the propriety of certain jury instructions given by the district court. District court Instruction No. 27 states as follows:

> "You are instructed that the manner in which the pipe was secured on the truck was the accepted practice for transportation and is evidence that due care was used by F-B Truck Lines and Richard Wood in securing the pipe for transportation."

Counsel for Leary objected to the instruction on the grounds that there is no proof of an "accepted practice"; the evidence on pipe loading procedures was conflicting; the instruction was a comment on the evidence; and the instruction makes a finding of fact which constitutes an invasion of the province of the jury.

Instruction No. 27 is reversible error. The district court made its own finding of fact from inconclusive testimony, instructed the jury on this fact as a matter of law, and in effect directed a verdict for F-B and Wood on the issue of negligence. With this instruction before it, the jury had no alternative but to find for F-B and Wood.

District court Instruction No. 28 states:

"You are instructed that the shipment of pipe involved in this case was in Interstate Commerce and controlled by the tariff of F-B Truck Lines on file and approved by the Interstate Commerce Commission. The tariff provides that the consignee, Bechtel Corporation, is responsible and assumes the responsibility for the safe unloading of the pipe."

Counsel for Leary objected to this instruction on the grounds that the tariff was in evidence and was a fact which speaks for itself; the instruction implies that Wood had no responsibility; Wood was an agent and chargeable with any negligence on his part; and Bechtel did not acknowledge receipt of delivery until after the accident.

The tariff in question, issued to F-B by the Interstate Commerce Commission, states in pertinent part:

"When hoists, cranes, winches, jacks, pulleys, blocks and tackle are required in the loading or unloading of heavy articles, the consignor or consignee as the case may be shall furnish same and the necessary men to operate such special equipment at his own expense, and also assume the responsibility for safe loading or unloading."

We hold that the giving of Instruction No. 28 was reversible error because it has the effect of misleading the jury to the conclusion that only Bechtel Corporation could be liable for the accident. This is particularly true when read together with Instruction No. 23 which says that if the jury finds " * * * the sole proximate cause of the accident in this case is the negligence of plaintiff's employer, Bechtel Corporation, then your verdict must be in favor of defendants." Instruction No. 28 at least

- 7 -

implies that Bechtel Corporation was solely liable because of the tariff; and under Instruction No. 23 a verdict is directed for the defendants in such circumstances. Liability for negligence in this case was an issue of fact for the determination of the jury.

Finally, we refer to Instruction No. 29, objected to by Leary. This instruction correctly states the law with respect to independent contractors. However, the giving of this instruction was improper because the independent contractor rule is irrelevant to the case. The Interstate Commerce Commission permit or certificate under which F-B operated clearly establishes that F-B is responsible for the transporting of goods in interstate commerce. See the Interstate Commerce Act, 49 U.S.C. section 303(c) and 49 C.F.R., Part 1057 --- Lease and Interchange of Vehicles. The regulation, adopted pursuant to statutory authority, states in section 1057.4:

> "(a) Contract requirements. The contract, lease, or other arrangement for the use of such equipment:
>
> " * * *
>
> "(4) * * * Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee [here, F-B] for the duration of said contract, lease, or other arrangement * * *."

Thus F-B has a nondelegable duty pursuant to its permit to assume responsibility for the possession, control and use of its equipment, any provisions of its contract with Wood notwithstanding.

The judgment of the district court is affirmed as to Kelly Pipe which is only involved in the issue of peremptory challenges. The judgment is reversed as to F-B and Wood and remanded to the district court for a new trial against these defendants.

_Frank J. Haswell_
-----------------------------------
Justice

We concur:

---

Chief Justice

_(signature)_

_(signature)_

---

Justices

Mr. Justice Wesley Castles concurring in part and dissenting.

I concur with the majority on Issues Nos. 1 and 2.

I dissent as to Issue No. 3. The instructions, taken as a whole, fairly presented the issues. I would affirm the judgment. The Chief Justice joins me in this dissent.

_(signature)_ Justice

---

Chief Justice

- 9 -