Thomas R. LUMPKIN and Linda Rawls
Lumpkin, his wife, Plaintiffs
and Appellants,

v.

Norman T. STREIFEL, individually and
d/b/a SH&S Construction, Defendant
and Appellee.

Civ. No. 9941.

Supreme Court of North Dakota.

Aug. 4, 1981.

Estebo, Carey, Schnobrich & Frank, Fairfax, Minn., for plaintiffs and appellants; argued by Steven Emmings, Fairfax.

Pearce, Anderson & Durick, Bismarck, for defendant and appellee; argued by Christine Hogan, Bismarck.

SAND, Justice.

This is an appeal by the Lumpkins from a summary judgment dismissing their personal injury action against Norman Streifel.

Thomas Lumpkin was employed as a carpenter by A & A Construction, an independent contractor, who was constructing a house for Norman Streifel, the owner, in Williston, North Dakota. A & A's job was to do the rough carpentry work. Neither party contests the characterization of the relationship between Streifel and A & A as one of owner and independent contractor.

On 16 October 1976, Lumpkin and other A & A personnel were at work on the house. The walls and subfloor of the house were already in place. The subfloor had an opening where a stairway was to be located. The opening had no railing or other barricade set up around it. Lumpkin was aware of this situation from the first day of his employment on the job. On 16 October 1976 Thomas Lumpkin fell through the

opening, struck his head on the basement floor and sustained severe injury.[1]

At that time the City of Williston had in full force and effect the BOCA[2] Basic Building Code, 6th Ed., of which Section 1313.4 provides:

"*Guard Rails*: All floor and wall openings shall be protected with substantial guard rails and toebars in accordance with accepted engineering practice."

The Lumpkins brought suit against Streifel for negligence, alleging that Streifel had violated the Williston building code and failed to provide a safe work site. Lumpkin's wife sought damages for loss of services, companionship and consortium.

In granting Streifel's motion for summary judgment of dismissal, the court stated: "There does not exist, as a matter of law in this case, a duty owed by the defendant [Streifel] to the plaintiffs and . . . defendant is entitled to a judgment as a matter of law . . . ." See, Rule 56(c), NDRCivP.

The Lumpkins recognized that generally an employer is not liable for the torts of an independent contractor. See, *Newman v. Sears Roebuck Co.*, 77 N.D. 466, 43 N.W.2d 411, 414 (N.D.1950). However, they argued that Streifel assumed a duty by signing the building permit application for the house. The application, signed by Streifel contained, in part, the following:

"The applicant certifies . . . that all City ordinances and building codes will be complied with in performing the work for which this permit is issued . . . ."

The Lumpkins asserted that Streifel, by signing the application, assumed a legal duty and responsibility to assure compliance with the mandated safety measures set out in the Code and ordinances, which duty was not delegable to A & A. But, if the duty was delegable, it raises genuine issues of fact as to whether or not Streifel actually delegated it, and, if he did not, or if it is not delegable, whether or not Streifel exercised reasonable care in fulfilling his duty.

They contended that Streifel violated § 1313.4 of the Code, and that the violation constitutes evidence of negligence, if not negligence per se. They also contended that the rule insulating an employer of an independent contractor from liability does not apply in this case and that the district court erred in determining that Streifel, as a matter of law, owed no duty to Lumpkin.

In response to Lumpkins' contention, Streifel asserted that actual compliance with the building code was effectively left to A & A—that any obligation he incurred by signing the application was delegated implicitly through his contract with a reliable independent contractor, A & A. He believes our opinion in *Fettig v. Whitman*, 285 N.W.2d 517 (N.D.1979), precludes application of an exception to the general rule of employer non-liability. He argued that if a tort was committed by leaving the stairway unguarded it was A & A's responsibility.

The record does not reflect that Streifel in any manner actually exercised control over the project or employees of A & A. The parties do not assert otherwise. Nor does the record indicate that A & A was an incompetent independent contractor.

---

1. Lumpkin, as an employee of A & A, was covered by Workmen's Compensation. An interesting situation could theoretically result if one of Lumpkin's arguments was fully accepted, making Streifel his employer. Would Streifel be able to invoke the protection of the Workmen's Compensation Act if he had coverage? But this is not a question we are required to resolve at this time.

2. BOCA stands for an organization known as Building Officials and Code Administrators International, Inc. The corporation describes itself as "a nonprofit municipal service organization dedicated to professional code as administration and enforcement, and to community de-velopment in general. The organization's goals encompass two main areas of service to the public and code administration profession, namely:

1. to serve the public by advocating the use of safe, suitable and modern construction techniques and materials through the BOCA model codes program; and

2. to serve governmental jurisdictions and their code administration personnel by providing technical information and services related to all specialty areas of code administration and enforcement, as well as through BOCA's complete model codes maintenance program."

For the purposes of this appeal, the Lumpkins do not argue that issues of material fact exist, and therefore all of the foregoing issues raised need not be resolved. The prime issue on appeal relates instead to duty, which is a matter of law to be resolved by the court before allowing a jury to hear evidence of negligence and proximate cause. See, *Kirton v. Williams Elec. Co-op, Inc.*, 265 N.W.2d 702, 705 (N.D.1978); and Prosser, Law of Torts, 4th Ed., § 37, p. 206.

We must determine if the trial court erred in granting the summary judgment of dismissal.

We note preliminarily that Lumpkin was within the class of persons to be protected by the building code. Section 100.4 of the Code reads:

"This Code shall be construed to secure its expressed intent, which is ... to secure safety to life and property from all hazards incident to the design, erection, repair, removal, demolition for use and occupancy of buildings, structures or premises."

Section 1306.1 reads:

"Whenever a building or structure is erected, altered, repaired, removed or demolished, the operation shall be conducted in a safe manner and suitable protection for the general public and *workmen employed thereon* shall be provided." [Emphasis added.]

Recently in *Peterson v. City of Golden Valley*, 308 N.W.2d 550 (N.D.1981), we concluded that trenchwork, when done properly, was not inherently and extrinsically dangerous, and that the owner or contractee was not liable for the torts committed by the independent contractor or subcontractor or their employees.

In *Fettig, supra*, which also involved a fall through an opening for a stairway in a house under construction, we said that the building of a house is not in the usual sense considered inherently or extrinsically dangerous so as to put into operation the exception defined in § 427 of the Restatement of Torts. This is not at issue in this case. We adhere to the general rule that an owner (employer) is not vicariously liable for the torts of the independent contractor or its employees.

With the foregoing as a background we will now consider what legal obligation, if any, the signing of the building permit application created between Streifel and the Lumpkins.

From Lumpkins' argument we can infer the obverse, that if Streifel had not signed the building permit application they would not attempt to hold him liable.

The proposition that a regulation or ordinance is effective, or that liability for noncompliance with the ordinance rests upon whether or not a written compliance statement has previously been obtained or made, is not in harmony with case law or common law of this country and, if adopted, would create some disturbing situations.[3]

Generally, every person is charged with knowledge of the provisions of statutes and must take notice thereof. 58 Am.Jur.2d Notice, § 21, p. 503. The concept that ignorance of the law is no excuse has been firmly embedded in our legal proceedings. *State v. Thorstad*, 261 N.W.2d 899 (N.D. 1978); *State v. Pyle*, 71 N.W.2d 342 (N.D. 1955). This principle and concept applies in criminal cases and we see no valid reason why the same should not apply to civil matters. Continuing in the same vein "neither ignorance of the ordinance ... or regulation ... is a valid defense." 62 CJS Municipal Corporations, § 319, p. 668. But in this respect see *State v. Wendling*, 217

---

3. For example, if a car license were conditioned upon the owner certifying compliance with traffic laws, regulations and ordinances and also that the car would always be used and driven in a safe manner, we can envision a myriad of problems. For example, if the owner were to permit some other person to drive the car, would the owner be liable for any injuries resulting from any traffic violations or for unsafe driving which might occur? The answer is obvious—the person committing the traffic violation or driving unsafely would be held liable. The same applies here.

N.W.2d 768 (Minn.1974), as to judicial construction of statutes and its effect upon persons involved before the judicial interpretation.

Applying the above principle and concept of law to the instant case, both A & A and Streifel, and all persons employed by A & A, are charged with knowledge of the ordinance and regulations. This presents the question: Did the signing of the application create any additional legal responsibility between Streifel and Lumpkin which otherwise would not have existed? Would this be considered similar to a statement that he will obey and comply with all laws? Under the circumstances here, we think not.

Our examination of the ordinances and building codes brought to our attention discloses that no special responsibility is placed upon any person or member of a class of persons as was the case in *Haimes v. New York Tel. Co.*, 46 N.Y.2d 132, 412 N.Y.S.2d 863, 385 N.E.2d 601, 602 (1978), where a *state law*, rather than an ordinance, imposed a civil responsibility upon "all contractors and owners and their agents [to] ... furnish" safe equipment and safe sites to work, etc. [Underscoring supplied.] But even language similar to that found in *Haimes* is not necessarily controlling in every instance, nor does it impose a liability upon a person who does not exercise any control over the work or employees. *Wells v. Stanley J. Thill and Associates, Inc.*, 153 Mont. 28, 452 P.2d 1015 (1969).

In *Wells, supra*, page 1017, the court, after noting and recognizing the general rule that the contractee [owner] generally is not liable for injuries to the employees of an independent contractor caused by the act or negligence of the independent contractor or subcontractor or co-employee, said:

"The rule is not affected by a statute making it the duty of owners, contrac-

tors, and subcontractors engaged in designated work, to take designated precautions for the safety of their employees, since such statutes are intended to apply only to that *member of the class enumerated who was engaged in the work designated at the time when the injury occurred.*" [Emphasis added.]

The Lumpkins, however, contended that there are many exceptions to the general rule and that the present case falls within one of the exceptions. In support thereof they cite *Giarratano v. Weitz Company*, 259 Iowa 1292, 147 N.W.2d 824 (1967), which involved an action by an employee of a subcontractor against a general contractor for injuries sustained in a fall. This case, however, is distinguishable in that the general contractor retained control of part of the work whereas, in the present situation, the owner did not retain any control of the work nor did he exercise any control over the work. Furthermore, in the *Giarratano* case, we have a general contractor and a subcontractor whereas in the present situation we have an owner and an independent contractor and, as such, § 414 of Restatement of Torts does not apply.

. The Lumpkins also relied upon *Leary v. Kelly Pipe Company*, 169 Mont. 511, 549 P.2d 813 (1976),[4] wherein the Montana Supreme Court had under consideration the legal effect of a tariff issued by the Interstate Commerce Commission, which, in pertinent part, provided as follows:

"When hoists, cranes, winches, jacks, pulleys, blocks and tackle are required in the loading or unloading of heavy articles, the consignor or consignee as the case may be shall furnish same and the necessary men to operate such special equipment at his own expense, and also assume the responsibility for safe loading or unloading."

---

**4.** We specifically note that the Montana Supreme Court in *Leary v. Kelly Pipe Company*, 549 P.2d 813 (Mont.1976), made no reference to an earlier Montana case, *Wells v. Stanley J. Thill and Associates, Inc.*, 153 Mont. 28, 452 P.2d 1015 (1969), in which the court held that an ordinance, even more specific than the Williston ordinance, did not impose a non-delegable duty upon the permit holder so as to make him liable for injuries sustained by employees of the independent contractor. From this we make the obvious conclusion that the Montana Supreme Court considered the circumstances of the two cases so completely different that there was no need to mention the case or to distinguish it.

The court noted the provisions of the Interstate Commerce Act, 49 U.S.C., § 303(c), and 49 CFR, Part 1057-Lease and Interchange of Vehicles, and the regulations adopted pursuant to § 1057.4 which, in part, provided as follows:

"(a) *Contract Requirements.* The contract, lease, or other arrangement for the use of such equipment:

.     .     .     .     .

"(4) . . . Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease, or other arrangement . . . ." 549 P.2d at 818.

The court then concluded that under this situation the holder of the permit or certificate had a non-delegable duty pursuant to the provisions of the permit to assume responsibility for the possession, control and use of its equipment, any provision of its contract notwithstanding.

A cursory examination of the situation in the *Leary* case, *supra,* and the situation in the instant case immediately reveals that a considerable difference exists between them and that the cases are readily distinguishable, especially as to the laws and regulations imposing a specific responsibility on the permit holder, whereas the ordinance and building code in question is couched in generalities.

We have also examined some of the other cases relied upon by the Lumpkins and conclude that those cases are all readily distinguishable from the instant case. In addition to those cases specifically mentioned and discussed, some involved a general contractor and employees of an independent contractor on the same project wherein the general contractor retained or actually exercised control or supervision of the project or employees. Our independent research of the authorities also reveals that a different rule of law generally prevails where the owner retains control or supervises a project or exercises some control over the project or employees. But this is not the situation in the instant case.

■ We believe the non-delegable principle may apply between the City of Williston and Streifel, but that is not at issue here and we need not and do not resolve . it. Neither do we express any opinion as to what the legal consequences would be if a member of the public had sustained an injury as a result of the unprotected opening for a stairway. We are satisfied, however, that as to fixing civil liability as distinguished from penal liability, the non-delegable principle does not apply between Streifel, the owner, and A & A, the independent contractor, and its employees.[5] The principle announced in *Wells v. Stanley J. Thill, supra,* by the Montana court has full application to the situation here, specifically because the Williston ordinance does not specifically state that certain responsibility must be assumed by the owner, but rather speaks in general terms. The ordinance and building code in question here are not comparable to the law stated in *Haimes v. New York Tel. Co., supra,* but is similar to the language involved in *Wells, supra.*

---

5. Parallel to this case is *Gordon v. Matson,* 246 Ark. 533, 439 S.W.2d 627 (1969), wherein the court considered an action by an employee of a subcontractor against the prime contractor for injuries sustained in a fall from a third floor level where space between the construction and hoist had been located and was under exclusive control of the subcontractor.

The court referred to a legislative enactment containing provisions for penalties resulting from violation of the act or rules issued by the Commissioner of Labor and provided for recovery of those penalties in criminal proceedings or by civil action brought in the name of the state. The court noted that the act was penal in nature and should be strictly construed. The court further observed that the act contains no language indicating any intent on the part of the legislature to alter the existing law with respect to division of duties and responsibilities between prime and subcontractors, and then concluded that the enactment did not arbitrarily place responsibility for compliance upon the prime contractor. Neither does the building code nor the ordinance in question disclose an intent to change the general rule of law between an owner and an independent contractor.

■ Because Streifel, as owner, did not retain or actually exercise any control or supervision over the project or employees of A & A but was concerned primarily only with the "finished" product, we conclude that he should not be held liable for the negligence, if any, of A & A or its employees.

■ Finally we need to determine if proximate cause is significant in the instant case. In *Knorr v. K-Mart Corp.*, 300 N.W.2d 47 (N.D.1980), and *Chicago, M., St.P. & P.R. Co. v. Johnston's Fuel Liners*, 122 N.W.2d 140 (N.D.1963), we recognized the relationship and distinction between ordinary care, negligence and proximate cause, and the relative significance of proximate cause. In the instant case, proximate cause was not pleaded nor is it contended by the Lumpkins that Streifel's failure to act or assume responsibility constituted proximate cause. However, from the undisputed facts under the present circumstances, we conclude that the action or, more specifically, nonaction by Streifel was not the proximate cause producing injuries to Lumpkin.

The summary judgment dismissing the personal injury action is affirmed.

ERICKSTAD, C. J., and VANDE WALLE and PAULSON, JJ., concur.

PEDERSON, Justice, dissenting.

One thing is clear—the City of Williston has adopted an ordinance which imposes a duty upon an applicant for a building permit to assure compliance with applicable safety rules. When Streifel signed the application he expressly undertook a duty. To hold that he is, as a matter of law, nonetheless free of responsibility, renders part of the ordinance meaningless.

In my view the majority opinion recites what the law ought to be, not what it is. I do not think it was wise for the City to impose the duty on the basis of who signed the application for the permit—but it is not ordinarily a prerogative of the courts to question the wisdom of legislation. See *Montana-Dakota Utilities Co. v. Johanneson*, 153 N.W.2d 414 (N.D.1967). If we intend to say that cities may not impose a duty upon permit applicants, we should be more explicit, and we should explain why.

The summary judgment of dismissal should be vacated and the case remanded for trial.