No. 12770

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

———————

D. M. WILLIAMS,

                    Plaintiff and Respondent,

    -vs-

MONTANA NATIONAL BANK OF BOZEMAN, MONTANA,

                    Defendant and Appellant.

———————

Appeal from:   District Court of the Eighteenth Judicial District,
               Honorable W. W. Lessley, Judge presiding

Counsel of Record:

    For Appellant:

        Bennett and Bennett, Bozeman, Montana
        Lyman H. Bennett, Jr argued and Lyman Bennett, III
        argued, Bozeman, Montana

    For Respondent:

        Bolinger and Wellcome, Bozeman, Montana
        Page Wellcome argued, Bozeman, Montana

———————

                            Submitted:  January 9, 1975

                              Decided: MAY - 7 1975

Filed: MAY - 7 1975

_Thomas J. Kearney_
                                    Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiff entered in the district court, Gallatin County, following a jury verdict, in the sum of $6,840, and denial of a motion for new trial.

Mrs. Rosa J. Williams, wife of plaintiff D. M. Williams, testified that on July 19, 1973, she was at their rural home when she saw a man coming up the walk. There was another man in a car who did not get out. The man told Mrs. Williams that he heard they had been having some bad electrical storms and that he was with a lightening rod company; that he heard she had been having a little trouble with the lightening rod and wanted to talk to him. He advised her that she needed a new clamp on the lightening rod and she authorized him to put it on.

Mrs. Williams further testified the man talked fast and moved fast, moved his feet a little, and kept edging off as she talked to him, which she considered unusual. The man advised her the clamp would be $1.26 and that he had to have a check so he could mail it in to the company. She secured her check book and a pen. The man said he would fill in the check for her and she gave him the check book. He filled it in by writing $1.26 in figures and in longhand, putting a date on it. He advised her that he would stamp the check with the company stamp. She looked the check over and it looked alright to her, although it was not as she would have written it. The check was written so that the figures were so far to the right hand side that there was ample space to write the additional figures 684 to the left without any appearance of change. The words were written on the lower line so close to the word "Dollars" that there was ample space to write "Six thousand eight hundred forty" ahead of it without any appearance of alteration.

On cross-examination, Mrs. Williams testified the individual

did not introduce himself; did not give her a business card or anything to identify him; she did not check the work before paying; she gave the man her entire check book; and, he filled out the check while it was in the check book.

The teller who cashed the check at defendant Montana National Bank, where plaintiff had an account, and with its predecessor since about 1918 or 1919, testified that she went to the journal and checked the funds to see if there was enough money in the account. She also checked the person's signature to see if the signature on the check and on the signature card at the bank were the same; they were, so she cashed the check. Other witnesses testified as to the usual and reasonable commercial standards existing in the defendant bank and other banks in Bozeman.

James Jordan, a deputy sheriff, testified and identified a photographic copy of one sheet of an April 19, 1973, bank protection bulletin. This witness further testified Mr. Bruce Ellis, president of the bank, had informed the city-county detective team that the method of operation used here was described in the April 1973, bank protection bulletin. He further testified that Ellis did not have a copy of the bulletin in question and suggested checking with other banks. Although this witness testified that the original bulletin from which the copy was made was not circulated in the Montana National Bank to his knowledge, over defendant's objection the court admitted the exhibit into evidence. On cross-examination Jordan testified that it was one of his detective partners, who first brought up the bulletin matter to Mr. Ellis.

At the conclusion of plaintiff's case, defendant moved for a directed verdict and dismissal of the case which was denied.

Bruce Ellis testified in defendant's case that he knew

officer Ron Green and he had met another officer, whom he presumed was Jordan. These officers were conducting an investigation and they mentioned to Ellis that they found there were other occurrences similar to this situation which had developed in the state and they were informed there was some kind of a notice on this individual in a bankers' bulletin. Ellis stated the officers wanted the April 1973 bank protection bulletin, but he was unable to find it in the bank and so advised the officers. He further testified he had no recollection of ever seeing that particular bulletin and that if a bulletin of that type comes to the bank, it is deposited on his desk, he reviews it, and passes it on to the other officers and it goes on from there.

Upon this appeal defendant presents these issues:

(1) Was the plaintiff negligent in the manner in which the check was executed?

(2) Did such negligence contribute as a proximate cause to the injury allegedly suffered by the plaintiff?

(3) Was the evidence sufficient to warrant the verdict?

(4) Was it error to admit in evidence the photostatic copy of the bulletin over defendant's objection?

(5) Was it error to deny defendant's motion for a directed verdict?

(6) Was it error to refuse to submit the issue of assumption of risk to the jury?

(7) Was it error to refuse to instruct the jury on the provisions of the Uniform Commercial Code?

(8) Did the court err in denying the motion for a new trial?

As to the plaintiff's negligence, his wife and agent knew how to write a check and signed the check in question contrary

to the manner in which she usually made out a check, according to her own testimony. She knew there was plenty of space for insertion of larger amounts ahead of the figures and words of amount in the check and was also negligent in not requiring that the payee's name be inserted in the check and in making delivery of the check under the circumstances.

The jury was instructed:

"You are instructed that every person is responsible for injury to the person or property of another, caused by want of ordinary care or skill, (subject to the defense of contributory negligence). When used in these instructions, negligence means want of such ordinary care or skill. Such want of ordinary care or skill exists when there is a failure to do that which a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done."

This instruction conforms to the 1969 decision in Flansberg v. Montana Power Company, 154 Mont. 53, 460 P.2d 263, 257, where the Court said:

"Further, negligence imports such a want of attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns."

Section 19-103(16), R.C.M. 1947, provides:

"The words * * * 'negligence,' * * * and 'negligently' import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns."

Section 19-103(16), R.C.M. 1947, was relied upon in Mang v. Eliasson, 153 Mont. 431, 435, 436, 458 P.2d 777, where the language of the quoted section was followed with this language by the Court:

"In other words, negligence is described as conduct which falls below the standard established by law for the protection of others against unreasonable risk and necessarily involves the concepts of reasonableness and foreseeability."

In Mang, this Court used this language:

"In the same vein, we quote with approval the following language from Harper and James, The Law of Torts, Volume 2, at page 929:

"' * * * Negligence is conduct involving an unreasonable risk of harm, and the test for determining whether a risk is unreasonable is supplied by the following formula. The amount of caution "demanded of a person by an occasion is the resultant of three factors: the likelihood that his conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which he must sacrifice to avoid the risk."

"'In striking this balance--that is, in weighing the likelihood of harm, the seriousness of the injury and the value of the interest to be sacrificed--the law judges the actor's conduct in the light of the situation as it would have appeared to the reasonable man in his shoes at the time of the act or omission complained of. Not what actually happened, but what the reasonably prudent person would then have foreseen as likely to happen, is the key to the question of reasonableness * * *.'"

Under these definitions of negligence the jury could find that plaintiff was negligent since he knew that his wife had in the past signed checks prepared by others and thereby authorized her to do so, since he had done nothing to stop her from this procedure. His wife should have foreseen that there was a likelihood of raising the check when she left it the way it had been written, permitting the placing of the figures and the words so far to the right so as to permit what occurred.

If the jury should find plaintiff negligent, then it must determine whether such negligence contributed as a proximate cause. The jury was instructed:

"You are instructed that the proximate cause of an injury is that which in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury, and without which it would not have occurred."

Recently in Brandenburger v. Toyota Motor Sales, U.S.A., Inc., 162 Mont. 506, 512, 513 P.2d 268, this Court stated:

"The test most generally employed in determining causation is the 'but for' test. Montana has adopted this test in numerous cases."

The jury under the fact situation here could then determine there would have been no loss "but for" the negligence of Mrs. Williams, wife-agent of plaintiff, as hereinbefore related.

We turn now to the admission of the photostat of the bank bulletin. Plaintiff asserts the reason for its introduction was to show a warning to the defendant bank regarding the modus operandi of the man who obtained and cashed the check. In our view, the foundation for its admission was insufficient and the trial court erred in admitting it into evidence, particularly here, where there is a factual question as to whether or not the face of the check was such as to cause the bank to question its validity. The teller who cashed the check could not recall having seen the bulletin and upon being shown the photostat, she could not identify the individual depicted. We do not disapprove custom and inferences as contended by plaintiff but in this cause the insufficiency of the foundation does not support the inferences attempted to be drawn therefrom.

As regards the contentions with respect to assumption of risk, in our opinion that doctrine is not applicable to the fact situation here.

As to the failure of the court to instruct the jury on the provisions of the Uniform Commercial Code, plaintiff contends the court could have instructed the jury on the provisions of the Code, but it endeavored to simplify the instructions and send the case to the jury on a straight negligence, contributory negligence, and proximate cause set of instructions.

While this may have appealed to the court as a satisfactory solution, it did deprive defendant of possible defenses based upon the provisions of the Uniform Commercial Code. A party has a right to have instructions given which are adaptable to his theory of the case. Wollan v. Lord, 142 Mont. 498, 385 P.2d 102.

- 7 -

Here plaintiff charged defendant was negligent in cashing the check in that the bank breached its general obligation to handle plaintiff's account by acting contrary to reasonable commercial standards. Surely then the bank should be allowed to have the jury instructed as to what reasonable commercial standards are, as set forth in the Uniform Commercial Code.

The judgment is reversed and the cause remanded for new trial.

_____
Chief Justice

We concur:

_____

_____

_____
Justices