No. 83-123

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

CONRAD GEE,

        Plaintiff and Appellant,

  -vs-

EVERETT EGBERT, LARRY BUSCH, MIDWEST
WELDING, INC., MATZINGER ELECTRIC,
INC., and YELLOWSTONE HYDRAULICS, INC.,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable W. W. Lessley, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Wellcome & Frost; Albert A. Frost, Bozeman, Montana

    For Respondents:

        P. Keith Keller, Helena, Montana (Busch)
        Dwaine Roybal, Billings, Montana (Egbert)
        Gig Tollefsen, Bozeman, Montana (Midwest Electric)
        William E. Jones, Missoula, Montana (Matzinger Electric)
        Gregory Morgan, Bozeman, Montana (Yellowstone Hydraulics)

---

Submitted on Briefs: November 10, 1983

Decided: March 29, 1984

Filed: MAR 29 1984

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appeal by the plaintiff, Conrad Gee, from a judgment against him based on jury verdicts entered in the District Court, Eighteenth Judicial District, Gallatin County. This case was a "third party" action incident to a work related injury and in part was the subject of a prior opinion in Gee v. Cartwheel Restaurant (Mont. 1982), 642 P.2d 1070, 39 St.Rep. 597.

Gee sought to recover damages based on strict liability in tort, on negligence, and on breach of warranty. Gee was injured when he attempted to remove a chef's jacket which had become lodged between the floor of a dumbwaiter and the landing sill of the upper floor of the Cartwheel Restaurant. After unsuccessfully attempting to dislodge the jacket from outside the dumbwaiter, Gee entered the dumbwaiter and pulled on the jacket. Suddenly, the dumbwaiter broke loose and descended. Plaintiff's arm was caught between the frame work of the dumbwaiter car and the dumbwaiter shaft.

In late 1970 and early 1971, Larry Busch hired Everett Egbert to construct a 12-sided building which would later become the Cartwheel Inn-Restaurant, at the Four Corners near Bozeman. The plan for the 12-sided building was devised by Busch and Egbert and reduced to a drawing from which the building was built. Egbert consulted with an engineer for assistance with the structural components, and with mechanical, plumbing and electrical experts for their respective installations. Busch contracted with Egbert because previously Egbert had built a house for him and had done some other work, and Busch had relied on Egbert's reputation as a builder.

During the course of construction, either Busch or Egbert decided that installation of a dumbwaiter in the building would be useful. Neither remembered whose idea it was. Busch had no specific requirements for the dumbwaiter, except for its location in the building, and its general size and weight requirements, dictated by its proposed use in hauling carts of dishes and a thermidor heating cart.

Egbert contacted Midwest Welding for assistance in building the dumbwaiter car; Midwest in turn contacted Yellowstone Hydraulics. Ultimately, Egbert built the shaft for the dumbwaiter in the building, Midwest fabricated a platform or dumbwaiter car, Yellowstone Hydraulics supplied the hoist and motor mechanism, Midwest Welding installed the system, and Matzinger Electric connected the electrical controls. Egbert devised a door to open and close with the dumbwaiter.

On completion of the Cartwheel Restaurant, Busch operated it from March, 1971 until the fall of 1974. He leased it, repossessed it, and leased it again. He sold it outright to one Warburton, in February 1976.

Gee had been employed at the Cartwheel Restaurant for about a year when the accident occurred. In that period of time he worked as a dishwasher and did odd jobs. Part of his duties included unloading from the dumbwaiter in the basement of the premises, materials and produce that had been loaded on the dumbwaiter by truck drivers. He testified that he had never ridden in the dumbwaiter. It was operated by pushing buttons which raised or lowered it from floor to floor. We have already described the incident which brought about Gee's injuries on July 19, 1980.

After the jury verdict, plaintiff made post-trial motions which were by the court denied. This appeal ensues.

I.

## Peremptory Challenges

The first issue raised by Gee is whether the District Court erred in allowing each defendant four peremptory challenges.

The number of peremptory challenges to be granted to each party was a subject discussed at the pre-trial conference. The court queried counsel for the defendants as to whether they were antagonistic toward each other in their positions in the case. Two of defendants' counsel indicated that there was antagonism between all of them in that each was pointing a finger at one or others of the defendants as responsible for the injuries to the plaintiff. All of the defendants were independent or independent contractors and each would claim in the law suit that not it or he but those of the other defendants were responsible. Counsel for plaintiff at that time indicated first that the "antagonism question does bother me. . . and I don't think it's clear that they're all that antagonistic. They are all claiming no defect, no negligence, we aren't responsible, but there's not the antagonism that we had in the Kuhnke case. . ." However, at the end of the colloquies between the court and defendants' counsel the plaintiff's attorney told the court "I'll withdraw my comment after hearing from counsel." Thereupon the District Court made its ruling that it would grant each party to the action four peremptory challenges to the selection of the jury. No specific objection was made by plaintiff's counsel at that time.

- 4 -

The cause came on for jury trial, prospective jurors were examined on voir dire by all of counsel, and thereafter the parties exercised their peremptory challenges by denoting the same on a form provided by the Clerk of the District Court. The form indicates that the plaintiff and each of the parties defendant exercised all of their four peremptory challenges. However, there is nothing on the record which would indicate that plaintiff made any further objection, requested further peremptory challenges, or objected to the exercise by all of the parties defendant of some twenty (20) peremptory challenges by them.

On appeal, Gee's counsel complains that the District Court erred in granting the number of challenges, apparently as inherent error, because no contention is made in the briefs or in the record that Gee was prevented through the grant of the peremptory challenges from getting a fair jury to try his case, unless we are to consider the adverse special verdicts against Gee as an indication of prejudice. In other words, from all that appears of record, the cause was fairly and fully tried by the jury selected after the exercise of the peremptory challenges.

Essentially we summed up the law with respect to the granting of extra peremptory challenges in Adams v. Cheney (Mont. 1983), 661 P.2d 434, 442, 40 St.Rep. 383, 391. Succinctly, section 25-7-224, MCA, entitles each party to four peremptory challenges. In Lauman v. Lee (Mont. 1981), 626 P.2d 830, 38 St.Rep. 499, this Court approved the granting of separate peremptory challenges to co-defendants who occupy hostile positions toward each other. We held however in Leary v. Kelly Pipe Company (1976), 169 Mont. 511, 549 P.2d 813, and in Ashley v. Safeway Stores, Inc. (1935),

100 Mont. 312, 47 P.2d 53, that the complaining party must show he has been prejudiced by the grant of extra peremptory challenges. We stated in Leary that the complaining party must show (1) that he exhausted his peremptory challenges, (2) that he has suffered material injury from the actions of the court, and (3) that as a result thereof, one or more objectionable jurors sat on the case. 169 Mont. at 516, 549 P.2d at 816.

In Hunsaker v. Bozeman Deaconess Foundation (1978), 179 Mont. 305, 588 P.2d 493, this Court, recognizing the problem that proving prejudice may be practically impossible, required that district courts consider the problem of peremptory challenges at the pre-trial conference, which was done in this case, and provide a record which expressly sets forth the reasons for its ruling and the facts on which it relies in making its decision. In this case, the exchange between the District Court and defendants' counsel respecting their antagonism was brief. However, its appears to have been accepted by counsel for the plaintiff. But most importantly, Gee here fails the Leary test because the record before us does not show that Gee suffered material injury from the action of the court or that because of the additional challenges, one or more objectionable jurors sat on the case.

We find no error therefore in the grant of additional peremptory challenges here.

It is to be noted in connection with this issue that there were two pre-trial conferences. At the preliminary pre-trial conference, held on December 4, 1981, the minutes of the District Court, which are included as an appendix to appellant's brief, state that each defendant appeared to be

adverse and would be allowed four peremptory challenges. The minutes further state that the plaintiff objected to this and "will brief it if necessary." No brief on the subject was filed.

What we have had to say about the pre-trial conference and the lack of objection of the plaintiff to the grant of the peremptory challenges occurred at the second pre-trial conference on October 13, 1982, one week before actual trial commenced.

## II.

### Instructional Error

Plaintiff Gee subdivides this issue in his brief, claiming error in the instructions given or refused with respect to negligence, and again with respect to strict liability in tort.

A.    Instructions relating to negligence.

The court, at Gee's request, gave a general instruction on negligence, to the effect that every person is responsible for injury to the person or property of another caused by the want of ordinary care or skill (see section 27-1-701, MCA), and further stating that negligence means want of ordinary care or skill which exists when there is a failure to do that which a reasonable and prudent person would have ordinarily done under the circumstances of the situation, or doing what such person under the existing circumstances would not have done.   See Stocking v. Johnson Flying Service (1963), 143 Mont. 61, 387 P.2d 312 ; Ahlquist v. Mulvaney Realty Company (1944), 116 Mont. 6, 152 P.2d 137.

Plaintiff Gee claims error in the court's refusal of two further instructions offered by him:

"Instruction No. 43

"The manufacturer of a product that is reasonably certain to be dangerous if negligently made, has a duty to exercise reasonable care in the design, manufacture, testing and inspection of any product and in the testing and inspection of any component parts made by another so that the product may be safely used in a manner and for a purpose for which it was made.

A failure to fulfill that duty is negligence."

"Instruction No. 44

"You are instructed that a manufacturer of a product that is reasonably certain to be dangerous if negligently made has a duty to exercise reasonable care in the design, testing, and inspection and manufacture of the product so that the product may be safely used in a manner and for the purpose it was made.

A failure to fulfill that duty is negligence."

The District Court refused the instructions on the grounds that they were inapplicable to this case since manufacturing is not involved. The District Court was clearly correct.

Gee also argues that under his theory of the case, he was entitled to further instructions delineating the various contractors' duties and especially requiring a higher standard of care than that normally chargeable to a lay person. "Without these additional instructions," says Gee, "it is impossible to determine if the jury applied a different or lower standard of care for the contractors." Gee argues that it would clearly be error if all the defendants were judged by the same standard of care to which the defendant Busch (the former premises owner) was held, because Gee claims a separate and higher duty of care was owed to him by the defendant contractors.

In making this argument, Gee relies upon Williams v. Montana National Bank of Bozeman (1975), 167 Mont. 24, 534

P.2d 1247.  In _Williams_, a husband sued the bank in a situation where the plaintiff's wife had signed a check to an unidentified man for $1.26.  The stranger made out the check in the wife's presence, leaving room enough on the lines of the check so that later he could raise the check from $1.26 to $6,841.26.  No payee's name was on the check when the wife signed it for the stranger.  The stranger took the check to the bank and received payment for the raised amount.  The husband sued the bank, and the court submitted the case to the jury on the theory of ordinary negligence.  This Court reversed, saying that the bank was entitled to have the jury instructed upon the provisions of the Uniform Commercial Code, as to reasonable commercial standards in the processing of checks.  The applicable commercial standards in the Uniform Commercial Code are not specified in _Williams_, but we note that section 30-4-103(3), MCA, provides that action or non-action by a bank approved by the Uniform Commercial Code or pursuant to the Federal Reserve Regulations or "operating letters" constitutes the exercise of ordinary care. Likewise, action or non-action by a bank consistent with clearinghouse rules or with general banking usage not disapproved by the Uniform Commercial Code, constitutes ordinary care.  Thus, there are specific statutes relating to customs, standards, usages and rules which must be considered in determining ordinary care used by banks in cases such as _Williams_.

Unlike _Williams_, there is in this case no applicable standards which would relate by statute or regulation to the defendants, or any of them, in their duties regarding the installation of the dumbwaiter.  There is no statutory or other basis that we can determine that would require that the

- 9 -

jury be instructed to apply a higher level of care to independent contractors than to the landowner, Busch. Indeed the standard of care applicable to such entities could not be different from what the court instructed, that is, each party had the duty of exercising such ordinary care as reasonably prudent persons would exercise in the same or similar circumstances. Beyond the instructions which Gee offered, which we have set forth above and which are clearly inapplicable here, Gee offered no further instructions relating to the duty of care by any of the other defendants in their respective fields. The reason is obvious: there were no statutes or rules applicable to such manufacturers at the time of the construction here. The District Court may not be put in error on such grounds.

Gee contends that the District Court gave two other instructions which he claims are error. One was Instruction No. 10:

> "A person who sells land is not subject to liability for physical harm caused to the buyer or others while on the land after the buyer has taken possession, by any dangerous condition, whether natural or artificial, which existed at the time that the buyer took possession."

Gee also objects to Instruction No. 11:

> "A contractee-owner is not liable for the acts of an independent contractor or his servants. The owner's right to oversee that the work of various independent contractors proceeds satisfactorily imposes on the owner no duty to insure that any contractor's work is done in compliance with all the various safety codes."

Gee also contends that Instruction No. 11 conflicts with the court's Instruction No. 8, which stated:

> "Ordinarily, one who employs an independent contractor is not liable for the acts or omissions of such contractor or its employees. However, one who employs an independent contractor to do work

- 10 -

which the employer should recognize as likely to create during its progress a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm proximately caused to them by the failure of the contractor to exercise reasonable care to take such precautions."

Court's Instruction No. 8 is by its terms limited to dangerous situations existing during the progress of the construction. There is no conflict therefore between court's Instruction No. 8 and court's Instruction No. 11. Gee's further objections to the court's Instruction No. 10, now expressed, are based upon Restatement of Torts, 2nd., §§ 410-415. In any event, however, these objections were not raised at the time of the settlement of the instructions and so may not be considered by us on appeal. Richland County v. Anderson (1955), 129 Mont. 559, 574, 291 P.2d 267, 275.

Gee contends that the giving of the Instructions Nos. 10 and 11 amounted to a peremptory charge to the jury to find for the defendant Busch. We however find no error arising out of these instructions on the ground of objection given at the settlement of instructions, that the subject was covered by court's Instruction No. 8, above. The District Court did not err in overruling that objection.

B.    Instructions relating to strict liability in tort.

Gee contends that the court erred in failing to give his offered Instruction No. 24, as follows:

"You may find that the dumbwaiter was defective and unreasonably dangerous if you find that it was not functioning as intended at the time of the accident, and the failure of the dumbwaiter to function as intended was a proximate cause of the plaintiff's injury."

Gee contends he was entitled to this instruction under Brown v. North American Manufacturing Company (1978), 176

Mont. 98, 576 P.2d 711. In Brown we held that patent as well as latent design defects could impose strict liability on a manufacturer under certain conditions. Gee's contention here is that the alleged design defect was latent, so as to entitle him to the instruction. Offered Instruction No. 24 was obviously too broadly stated, and inapplicable to the facts in this case. The dumbwaiter was jammed because of the interposition of the chef's jacket. The thrust of Gee's case was that the design of the doors to the dumbwaiter shaft improperly permitted a chef's jacket to enter and get caught between the floor of the dumbwaiter and the sill. Instruction No. 24 does not focus on that issue in any manner.

Under this heading, Gee also claims error in the refusal of the District Court to give the following instruction:

> "When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury, or requires that in the line of his duty he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, insofar as to limit the caution he can take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care."

There was no support in the record for this instruction. There is no evidence that Gee's employment required that he take risks which ordinarily a reasonably prudent person would avoid. Other evidence raised a fact question for the jury as to whether Gee had been instructed not to enter upon the dumbwaiter.

Gee also raises under this heading, the refusal of the court to give his proposed Instruction No. 27:

> "You are instructed that compliance with a relevant industry standard at the time of construction of the dumbwaiter at the Cartwheel Inn Restaurant does not prevent a finding of defectiveness or

- 12 -

negligence where a skillful and prudent contractor
would take additional precautions."

Again, the instruction is unsupported in the evidence.

For the reasons foregoing, we find no instructional
error in this case on the grounds raised by the plaintiff,
Gee.

### III.

Building Code Exhibits

Gee claims error in the admission to evidence by the
court of defendant Egbert's exhibits A and B, copies of the
1967 and 1979 Building Codes respectively.

Exhibit A, the 1967 Building Code, contains no mention
of or reference to an elevator code, though one was in
existence at the time (Exhibit 15).   Exhibit B, the 1979
Building Code, did contain the National Elevator Code.

Testimony in the case indicated that at the time of
construction here, there was no statute or other legal
regulation making compliance with the elevator code
mandatory.   Such compliance became mandatory after the
construction of the dumbwaiter, and the mandatory necessity
of compliance is reflected in the 1979 Building Code.

The objection made at the time of the admission to
evidence of Egbert's exhibits A and B was that the exhibits
were not relevant.   The court overruled the objection.   It
was clearly relevant for the jury to understand that in 1971,
when the dumbwaiter was constructed, the building code in
effect at the time did not contain the elevator code, which
would have covered dumbwaiters.   No error occurred here.

### IV.

Punitive Damages

Gee assigns error to the action of the District Court in not submitting to the jury his claim for punitive damages against the defendants.

The court acted at the close of the plaintiff's case in chief. At that point the evidence indicated that a Mr. Merry, of Yellowstone Hydraulics, Inc., recalled discussing safety devices with Mr. Westlake of Midwest Welding, Inc. Merry had no contact with Egbert, the contractor. It would have been Westlake who would have relayed any information about door construction on dumbwaiters to Merry or to Egbert. Westlake could not recall what Merry had said to him about safety devices on the dumbwaiter, and Egbert did not consult with anyone other than Midwest Welding, Inc., about the construction of elevators at any time here in question. Gee contends that these facts presented a question to the jury as to whether Egbert and Midwest Welding, Inc. were guilty of actual or presumed malice as a basis for punitive damages.

A jury may give damages for the sake of example and by way of punishment if the jury finds that the defendant or defendants have been guilty of oppression, fraud, or actual or presumed malice, in actions for tort, in addition to the actual damages. Section 27-1-221, MCA.

Exemplary damages may be awarded in cases where there is no direct evidence of fraud or malice or gross negligence. They may be allowed when there is evidence of such recklessness and wanton disregard of another's rights that malice and evil intent will be inferred. If a defendant is grossly and wantonly reckless in exposing others to dangers, the law holds him to have intended the natural consequences of his act, and treats him as guilty of a willful wrong. Malice in law is implied when the defendant's conduct is

- 14 -

unjustifiable. Dvorak v. Huntley Project Irrigation District (1981), 196 Mont. 167, 174, 639 P.2d 62, 66.

It was apparently one of plaintiff's theories in this case that because of the construction of the hatch doors on the dumbwaiter, it was possible for the chef's jacket to become lodged so as to stop the operation of the dumbwaiter. Evidence was introduced that hatch doors should be so constructed that they do not open while the car is moving. This should be accomplished by the use of safety devices and interlocks that permit the opening of the hatch doors only when the dumbwaiter itself has come to a stop. Levelling switches should control the stopping of the dumbwaiter at the appropriate floor level. In this case, the hatch door was operated by a lever device that caused the doors to open as the dumbwaiter approached the floor level.

When we look at the evidence that is best for the plaintiff, it fails to establish a basis for punitive damages against any of the defendants. The elevator industry had promulgated a safety code for elevator doors including dumbwaiters in 1965. Such standards were not part of an enforceable building code when this dumbwaiter was constructed. It is not shown that these contractors were familiar with such industry standards. The dumbwaiter was not constructed to carry humans. The record is bare that the defendants, or any of them, through their employees or otherwise, knew of elevator standards that require interlocks on the doors, or that the defendants wantonly or purposely disregarded the existence of such standards. Nothing in the testimony indicates that any of the defendants could have acted to remedy the installation based upon knowledge or information that such injuries might occur. In other words,

there is no basis upon which to imply malice or wantonness on the part of any of the defendants. The District Court was correct in taking from the jury the consideration of punitive damages. Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 580 P.2d 915.

V.

## Evidence To Support The Jury Verdict

Counsel contends that the verdict here is against the evidence because substantial credible evidence existed to support a verdict for the plaintiff.

Gee points out that the uncontradicted opinions of Mr. Merry of Yellowstone Hydraulics, Inc. and witness Norman Priest, the two experts knowledgeable in the area of dumbwaiters and elevators, indicated that there was a failure by the defendants to use due care, as proper doors and safety devices were not incorporated in the dumbwaiter. Gee contends these failures rendered the dumbwaiter defective and unreasonably dangerous, and that the jury disregarded this evidence.

The District Court submitted to the jury a special verdict in which they were asked, "Were the defendants guilty of negligence which was the proximate cause of the claimed damages?" The jury answered as to Everett Egbert, 2 yes and 10 no; as to Midwest Welding, Inc., 1 yes and 11 no; as to Yellowstone Hydraulics, Inc., 12 no; and as to Larry Busch, 12 no.

The testimony of the experts respecting proper doors and safety devices for a dumbwaiter, standing alone, was insufficient to justify a verdict against any of the defendants for lack of proximate cause. A further question propounded to the jury was whether any evidence of negligence

proximately caused the injuries sustained by plaintiff. The jury found that it did not in each case.

The jury may believe the testimony of one witness and disbelieve that of another or any number of others, and the determination of the jury in that regard is final. Batchoff v. Craney (1946), 119 Mont. 157, 172 P.2d 308. The credibility of witnesses is generally a matter for determination by the jury under proper instructions from the court. Cottrell v. Weinheimer (1960), 137 Mont. 347, 351 P.2d 543, 90 A.L.R.2d 1339. It is not the function of this appellate court to overturn decisions on findings of fact made by a competent jury properly instructed on how to view the evidence. We find no error here.

VI.

## Judicial Conduct

Here counsel for Gee contends that the trial judge made numerous remarks critical of the plaintiff's case or plaintiff's presentation of his case, the cumulative effect of which prejudiced the jury against plaintiff's cause and his counsel.

It may be that the trial judge interrupted too frequently in this case. The over-weighing factor, however, is that counsel made no attempt during the trial to alert the court that it might be subjecting itself to such an argument on appeal. The way to preserve such an issue for appeal, as the cases relied upon by the defendants state, is to object to the court's actions and to ask for a mistrial based upon improper judicial conduct. Then the trial court itself will have an opportunity to weigh its conduct and to determine, at least, whether the motion should be granted. In fairness this should be done in all such cases. Otherwise, though we

do not find so here, it can be argued that the lawyer who is a victim of judicial misconduct is gambling on a win, and keeping the conduct in reserve in case he needs a point for appeal. See Evangeline v. Billings Cycle Center (Mont. 1981), 626 P.2d 841, 38 St.Rep. 550.

Because proper objection or motion for mistrial was not made in the District Court, we find no error on this ground of appeal.

VII.

Taxing of Costs

The final issue raised by Gee is that the court erred in taxing costs against him in favor of the defendants. His objection is to the allowance of the costs of depositions taken pre-trial. Some of the depositions were used in the trial.

Counsel for respondent Egbert concedes on appeal, as he did at the hearing on the motion to retax costs, that his cost bill should be stricken.

Our examination of record indicates that the depositions taken in this cause were in all cases for the purpose and convenience of the deposing party in marshaling their respective cases. Therefore the costs for such depositions must be borne by the deposing party. Lovely v. Burroughs Corporation (1974), 165 Mont. 209, 527 P.2d 557. Costs may be allowed against the losing party by the District Court only for such depositions as were used as evidence at the trial, or for purposes of impeachment during the trial. The costs in this case should be retaxed so that plaintiff is responsible only for such depositions as were used during the trial.

CONCLUSION

The judgment of the District Court is affirmed. The cause is remanded to the District Court for the purpose of retaxing costs in accordance with this opinion. No costs shall be awarded to the respondent, Everett Egbert.

_____
                Justice

We Concur:

_____
     Chief Justice

_____

_____

_____
                Justices